UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MARILYN BLACKWELL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  4:14 CV 252 JMB |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the Court, pursuant to 42 U.S.C. §§ 405(g) of the Social Security

Act ("the Act"), 42 U.S.C. §§ 401, *et seq.*, authorizing judicial review of the final decision of the

Commissioner of Social Security (the "Commissioner") denying Plaintiff Marilyn Blackwell's

application for disability benefits under Title II of the Act.  All matters are pending before the

undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. §

636(c).  The matter is fully briefed, and for the reasons set forth below, the decision of the

Commissioner is reversed and remanded for further proceedings consistent with this opinion.

## I.    Procedural History & Summary of Decision

Plaintiff, who was born on June 28, 1959, was 49 years old on June 27, 2009, when she

alleges she became disabled due to a numerous physical impairments.[1]  (Tr.[2] 58, 298, 302).  Her

application for Title II benefits was denied at the initial level,[3] and Plaintiff made a timely

---

[1]    Plaintiff initially claimed an onset date of February 20, 2006, but she later amended her
alleged onset date to June 27, 2009.  (Tr. 35, 94, 292, 298, 302)

[2]    References to "Tr." are to the administrative record filed by Defendant.

[3]    Missouri is one of several test states participating in modifications to the disability

request for a hearing. On August 8, 2010, the Administrative Law Judge ("ALJ") issued his first opinion finding Plaintiff not disabled. Plaintiff requested review by the Appeals Council of the Social Security Administration ("Appeals Council"), and on October 13, 2011, the Appeals Council remanded the case to the ALJ for further consideration. (Tr. 141). As explained below, the Appeals Council directed the ALJ to evaluate Plaintiff's obesity in accordance with SSR 02-01, and to further consider Plaintiff's maximum Residual Functional Capacity.

Following a second hearing, the ALJ issued a second decision on October 25, 2012. In that decision, the ALJ found that Plaintiff had the severe impairments of coronary artery disease, radiculopathy, chronic obstructive pulmonary disease ("COPD"), asthma, and obesity. He further determined that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[4] with certain specified restrictions, that she was able to return to her past relevant work, and that she would be able to make the adjustment to other work – as an automotive sales leasing representative – available in significant numbers in the national and relevant local economies. On the basis of these determinations, the ALJ concluded that Plaintiff was not disabled. (Tr. 32). The Appeals Council denied Plaintiff's subsequent request for review. The ALJ's October 25, 2012, decision stands as the final decision of the Commissioner.

---

determination procedures, which eliminate the reconsideration step in the administrative appeals process. *See* 20 C.F.R. §§ 404.906, 404.966. Plaintiff's appeal in this case proceeded directly from the initial denial to the ALJ level.

[4]    Light work as defined in the Commissioner's regulations:

> involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work . . . .

20 C.F.R. § 404.1567(b).

On appeal before this Court, Plaintiff argues that the ALJ: (1) failed to properly weigh medical opinion evidence in determining Plaintiff's RFC; (2) failed to reconcile inconsistencies between certain evidence in the record and the assigned RFC; (3) failed to properly consider Plaintiff's past relevant work as a home healthcare manager; (4) improperly issued an alternative ruling at step five; and (5) erred at step five in concluding that Plaintiff could work as an automobile leasing sales representative. In response, Defendant asserts that the ALJ properly weighed medical opinion evidence in determining Plaintiff's RFC, and that The ALJ properly employed vocational-expert (VE) testimony in reaching his decision.[5]

As explained below in Section VII. D., the ALJ erred at step four in assessing Plaintiff's past relevant work. The Court agrees with Plaintiff that the administrative record establishes that Plaintiff's past relevant work as a home healthcare manager, as performed by her, involved duties associated with two distinct occupations. Thus, such work involved a composite job. The ALJ erred by assessing the demands of Plaintiff's past relevant work as generally performed, rather than as she actually performed it. Hence, the ALJ did not conduct the individualized inquiry required.

The ALJ made an alternative finding at step five that Plaintiff could perform other work in the national economy. The Court concludes that, in this case, the alternative finding does not save the Commissioner's decision. As explained in Section VII. E., the matter must be remanded due to an unresolved conflict regarding the Vocational Expert's testimony.

The Court concludes that the matter should be reversed and remanded.

---

[5]    Defendant also contends that the ALJ made proper determinations regarding the severity of Plaintiff's impairments and her credibility. Because Plaintiff has not contested the validity of the Commissioner's determinations with respect to either of those issues, the Court does not address them here.

**II.     Application Forms, Work History, Function and Disability Reports**

Plaintiff earned a GED and worked as a telemarketer, small business owner, newspaper and sample delivery person, medical assistant, home healthcare manager, and home healthcare aide. Plaintiff's Work History report shows that she worked as a small business owner from December of 2004 through September of 2006, as a home healthcare manager from August of 1999 to October of 2003, as a home healthcare aide from January of 1999 through August of 1999, as a manager in a newspaper and sample delivery business from March of 1999 through August of 1999, and as medical assistant from June of 1998 through December of 1998. (Tr. 59-60, 303-05, 313, 315).

Plaintiff's Function Report indicates that she lives with her husband, a son, and a daughter. Despite pain in her arms, shoulders, legs, and feet, Plaintiff is able to dress, sweep, dust, mop, and fill the dishwasher. Due to shortness of breath, she is only able to perform these tasks at a slow pace. Plaintiff reported that she prepares simple meals for her family a few times a month, handles financial matters, drives, and shops for groceries with assistance. (Tr. 39, 41-42, 329, 331-32).

Plaintiff also reported that she can lift about ten pounds, but has difficulty climbing stairs, cannot carry any weight for much distance, cannot squat and kneel, can only sit still for a few minutes, and that bending causes her pain and shortness of breath. Plaintiff reported that she has no problem understanding or following a short list of spoken instructions. Plaintiff asserted, however, that she experiences difficulty in executing certain tasks due to her physical limitations and because her memory "is not good." Finally, Plaintiff reported periods of anxiety associated with choking spells. (Tr. 329-41).

### III.    Medical Records

The administrative record includes extensive medical records covering the period from 2005 to 2012.  The Court has reviewed the entire record.  The following is a summary of pertinent portions of the medical records relevant to Plaintiff's claim for benefits, as well as the records of those physicians who provided medical source opinions on Plaintiff's behalf.

### A.    *Medical Records*

Plaintiff was seen at the SSM DePaul Hospital emergency room on February 4, 2006, due to the sudden onset of chest pain.  At that time, Plaintiff had a history of seizure disorder and asthma.  She was admitted, briefly, to the Hospital for observation, and her chest pain responded to aspirin and nitroglycerin.  The treating physician surmised that her pain was due to gatstroesophageal reflux disease rather than cardiac disease.  The physician also noted that Plaintiff had been prescribed Dilantin for her seizure disorder, but that her Dilantin levels were sub-therapeutic.  The physician prescribed Prevacid, and continued Plaintiff on Dilantin for seizure and albuterol nebulizer treatments for asthma.  Medical records related to this hospitalization indicate that Plaintiff has a thirty-five year history of smoking a pack of cigarettes per day.  Plaintiff reported that she was attempting to decrease her smoking to one-half pack of cigarettes per day.  (Tr. 483-515).

On February 7, 2006, shortly after she was released from DePaul, Plaintiff was admitted to St. John's Mercy Hospital for chest pain and possible myocardial infarction.  A cardiac catheterization performed at that time revealed severe one-vessel coronary artery disease and a stent was inserted.  Plaintiff was counseled regarding her smoking and encouraged to adopt an exercise program and a heart healthy diet.  (Tr. 516-71).

On January 22, 2007, Plaintiff reported to the emergency room at St. John's Mercy

Hospital complaining of chest pain, radiating left shoulder and arm pain, and numbness in her fingers. Records from the cardiac catheterization performed at that time revealed normal left ventricular function electrophysiology.[6]

Additional testing performed in February of 2007, showed central disc protrusion at the C5-6 level, mild spinal cord deformity and a past rib resection.[7] (Tr. 639). Further testing also revealed cervical spondylosis[8] at the C4-C7 level. (Tr. 641-42). Plaintiff had neck fusion surgery in March of 2007 to address the cervical spondylosis and disc protrusion. (Tr. 712, 732). She showed improvement and subsequent physical exams showed Plaintiff to be within normal limits. (Tr. 492, 529, 585, 640-42, 671, 685, 711). Plaintiff also denied pain in or difficulties with her neck. (Tr. 566, 671). The record does not reveal objective medical evidence of cervical narrowing or stenosis, injections, or subsequent surgeries.

Plaintiff was seen at St. Anthony's Hospital on November 26, 2007, due to complaints of back pain. (Tr. 624). X-rays of her lumbar spine taken at that time showed osteoarthritis, levoscoliosis,[9] atherosclerotic calcification of the abdominal aorta (hardening of the abdominal artery), degenerative spurs, and disc space narrowing. (*Id.*).

---

[6]  An electrophysiology study is performed to identify abnormalities in heart rhythm. *Web*MD (12 March 2014) Web (21 May 2015) http://www.webmd.com/heart-disease/electrophysiology-study.

[7]  References to "C" signify the cervical region of the spine. Numerals are assigned in descending order to designate the vertebra and spinal nerves within each region. Stedman's Medical Dictionary A17, A18 (28th ed. 2006).

[8]  Cervical spondylosis is a condition involving changes to the bones, discs, and joints of the neck. These changes are caused by the normal wear-and-tear of aging. With age, the discs of the cervical spine gradually break down, lose fluid, and become stiffer. Cervical spondylosis usually occurs in middle-aged and elderly people. "Cervical Spondylosis," *Web*MD (23 May 2014) Web. (3 June 2015) http://www.webmd.com/osteoarthritis/guide/cervical-osteoarthritis-cervical-spondylosis.

[9]  "Levoscoliosis" refers to side-to-side curvature of the spine. "Scoliosis," Wikipedia: The Free Encyclopedia. Wikimedia Foundation, Inc., (17 April 2015); Web. (28 April 2015); http://en.wikipedia.org/wiki/Scoliosis.

On March 10, 2008, Plaintiff was admitted to St. Anthony's Medical Center for a hysterectomy. In May of 2008, Plaintiff was seen at St. Anthony's Medical Center following a fall in which she injured her right foot and ankle. Apart from mild lateral soft tissue swelling, the examining physician observed no bony or soft tissue abnormalities.

In November, 2008, Plaintiff had tarsal tunnel release surgery to relieve her foot and ankle pain. The record also indicates her foot and ankle pain later regressed to pre-surgery levels after Plaintiff's date last insured ("DLI"). (Tr. 593, 610, 658-59, 671, 707, 716, 971, 1067-68, 1071).

After June 30, 2009, (her DLI) Plaintiff continued to receive treatment for hypertension, asthma, hyperlipidemia, coronary artery disease, depression, anxiety, COPD and fibromyalgia from Drs. Lowder, Ojile and Geistler, whose records are summarized below. (Tr. 976, 980, 1381, 1408). Medical records for the period after June 30, 2009, showed multilevel coronary artery disease and COPD. (Tr. 1025, 1067).

### B. Opinions of Catherine Lowder, M.D. (Tr.300-1390)

From approximately January of 1998 through March 20, 2009, Dr. Lowder, Plaintiff's primary care physician, treated her for symptoms of asthma, coronary artery disease, degenerative disc disease, hypertension, restless leg syndrome, seizures, depression and anxiety, COPD, hyperlipidemia, radiculopathy, and fibromyalgia. (Tr. 572, 699, 706, 708, 726, 730, 742, 753, 774, 972, 980, 983, 985, 1044, 1113, 1137, 1180, 1268, 1332, 1363, 1381). Dr. Lowder also provided Plaintiff's post-operative care following her neck fusion surgery. (Tr. 712, 732). Over the years, Dr. Lowder prescribed Plaintiff numerous medications including, Dilantin, Theodur, Albuterol, Coumadin, aspirin, Lipitor, Plavix, Cardizem, Xopenex, Elavil, and Spiriva. (Tr. 351, 366, 402, 702, 712). In addition, Dr. Lowder approved Plaintiff for receipt of a

handicapped parking placard. Dr. Lowder repeatedly recorded Plaintiff's conditions as clinically stable on the treatment she gave her. (Tr. 822-833).

On July 29, 2009, Dr. Lowder completed a medical source statement, in which she assigned a disability onset date of October, 2007, and stated that Plaintiff suffered from coronary artery disease, degenerative disease of the cervical and lumbar spine, fibromyalgia, asthma, and seizure disorder. She opined that Plaintiff should use a cane, could sit for one hour in an eight-hour day, stand or walk for fifteen minutes in an eight-hour day, occasionally lift and carry ten pounds, had a strong grip and no problems with manipulation in either hand, could only occasionally reach above her head, had a medically determinable impairment of degenerative disease of the lumbar and cervical spine likely to cause pain, would likely be absent three times per month, and was not capable of prolonged sitting or standing, thus needing to change position more than three times per eight-hour work day. (Tr. 972-75). In 2012, Dr. Lowder completed a second medical source statement, identifying the same limitations. (Tr. 1381).

### C.    *Opinion of Joseph Ojile, M.D. (TR. 572-607)*

Dr. Joseph Ojile, a pulmonologist, treated Plaintiff for COPD, coronary artery disease, and respiratory and sleep issues between August of 2005 and August of 2007. (Tr. 572-605). A sleep study and other testing ordered by Dr. Ojile showed that Plaintiff suffered from restless leg syndrome, minimal obstructive airway disease, and a severe diffusion defect.[10] (Tr. 596, 605). Dr. Ojile's notes consistently documented Plaintiff's wheezing and shortness of breath. (Tr. 577, 605, 858). A CAT scan of the chest performed in August of 2005 showed no physical abnormalities of the lung or evidence of embolism. In September of 2005, Dr. Ojile diagnosed

---

[10]    The term "diffusion defect" refers "to deficiencies in oxygen pulmonary gas exchange that yield abnormally low partial pressures of arterial oxygen." Pathway Medicine (Web) (11 June 2015) http://www.pathwaymedicine.org/diffusion-defect.

minimal obstructive airway disease with a diffusion defect, but ruled out emphysema.

Dr. Ojile completed a medical source statement on August 4, 2009, stating that Plaintiff suffered from COPD, shortness of breath, and coronary artery disease. (Tr. 976). He opined that Plaintiff had been disabled since roughly August of 2007 and that her pain would preclude persisting or focusing on simple tasks during a sustained full-time work schedule of eight hours per day, five days per week. (*Id.*). Dr. Ojile also opined that if Plaintiff were to work she would require extra breaks and would need to lie down at some point during a normal eight-hour workday. (Tr. 978-989).

### D.    *Opinions of Dr. Perry Geistler, DPM*

Beginning in August of 2008, Dr. Geistler, a podiatrist, treated Plaintiff for tarsal tunnel syndrome, fibromyalgia, and peripheral neuropathy. (Tr. 906, 966). Dr. Geistler ordered nerve conduction studies that confirmed Plaintiff's tarsal tunnel syndrome. In November of 2008, Plaintiff had tarsal tunnel release surgery. (Tr. 612, 658). Dr. Geistler's notes indicate that Plaintiff's condition initially improved after the release surgery, but that she subsequently relapsed to almost the same condition she had exhibited prior to surgery. (Tr. 970). Nonetheless, Dr. Geistler concluded that Plaintiff's foot pain did not appear to be connected with polyneuropathy or spinal nerve root lesions. He noted that Plaintiff had swelling in her ankles after standing and persistent tingling and numbness in her feet and ankles.

Dr. Geistler completed a medical source statement on July 22, 2009. He diagnosed Plaintiff with peripheral neuropathy and fibromyalgia, and opined that Plaintiff could sit for an unlimited time and stand or walk for fifteen minutes at a time without a break. (Tr. 966). He also noted that: (1) Plaintiff's ability to balance was limited; (2) she could reach overhead, but only occasionally; (3) Plaintiff should use a cane; (4) Plaintiff would likely miss work three

times in a month; and (5) Plaintiff could lift and carry ten to twenty pounds, occasionally. Dr. Geistler noted muscle atrophy, sensory disruption, and positive objective indicators of Plaintiff's subjective complaints of pain. (Tr. 967). Dr. Geistler also completed an RFC Form dated May 27, 2009, opining that Plaintiff could occasionally lift or carry twenty pounds and frequently lift and carry ten pounds, stand or walk for six hours in a normal day, sit for six hours, and had unlimited push-pull capacity. He also noted that Plaintiff's complaints of pain were very subjective. (Tr. 951-52). Dr. Geistler completed a second medical source statement in 2012 and determined that Plaintiff's limitations were essentially the same as they had been in 2009. (Tr. 1408).

### E.    Opinion of Dr. Loretta Mendoza, M.D.

Dr. Mendoza, a consultative examiner, examined Plaintiff once, on June 7, 2010, and provided an opinion based on this examination. (Tr. 42-44). Dr. Mendoza identified Plaintiff's chief complaints as coronary artery disease, high blood pressure, asthma, COPD, and migraines. She noted that Plaintiff's last cardiac catheterization in 2009 had identified a preexisting stent but was otherwise normal. Dr. Mendoza found that Plaintiff had some shortness of breath, which was controlled by use of oxygen at night, and that her lungs were clear. She noted a strong grip in both hands; evidence of knee surgery with a limp in the left knee; shoulder stiffness with swelling and decreased flexion; decreased range of motion in Plaintiff's neck; and normal corrected vision. Dr. Mendoza opined that Plaintiff could lift and carry up to twenty pounds, was unlimited in her ability to sit, but could only stand for one hour at a time for up to three hours in an eight hour day. Dr. Mendoza observed that all of these health problems, with the exception of the migraines, were controlled by the medications prescribed to Plaintiff. (Id.). In addition, Dr. Mendoza noted that Plaintiff's migraine headaches reportedly occurred as often as

three times a week and lasted from 8 hours to 2 days, but that Plaintiff took no prescription

medication for the headaches. Dr. Mendoza further noted that the migraine headaches had been

ameliorated, although not completely eliminated, by Plaintiff's use of oxygen when she slept.

(*Id*.). Dr. Mendoza opined that Plaintiff had the capacity to perform "sedentary," but not "light"

work. (*Id*.).

## IV.    The Evidentiary Hearings

The ALJ conducted two evidentiary hearings in this matter. The first hearing was

conducted on April 8, 2010. At the first hearing, Plaintiff and Vocational Expert ("VE") Delores

Gonzalez testified. After the Appeals Council remanded the case, the ALJ conducted a second

hearing on July 2, 2012. At the second hearing, in addition to Plaintiff and VE Gonzalez, Dr.

Anthony Francis, M.D., testified as a reviewing medical expert.

### A.    *The April 8, 2010 Evidentiary Hearing (Tr. 41-79)*

1.    <u>Plaintiff's Testimony – First Hearing</u>

At the April 8, 2010 hearing, Plaintiff testified that she was left-handed, stood four feet

and eleven inches tall, and weighed approximately 200 pounds. (Tr. 54, 60). Regarding her past

work, Plaintiff testified that when she had worked as a home healthcare manager, she supervised

the aides who provided the home healthcare and handled scheduling, payroll, and training. (Tr.

65-66). With respect to activities of daily living, Plaintiff testified that she was unable to do

laundry, dishes, and other household chores, but occasionally cooked simple meals. (Tr. 75, 77).

She also testified that, from time to time, she took brief vacations with her family at a

condominium she owned in a nearby town. She further stated that she could walk about five

minutes before needing a break, sit about thirty to forty minutes before needing to move around,

and stand for thirty minutes if she kept moving. (Tr. 79). Plaintiff also testified that she needed

to elevate her feet while seated at a desk and that her arms hurt if she lifted more than ten pounds. (*Id*.).

### 2.     The VE's Testimony – First Hearing

The VE, Delores Gonzalez, identified the skill and exertional levels of Plaintiff's past work as follows: medical assistant, a semi-skilled occupation at the light exertional level; telemarketer, a semi-skilled occupation at the sedentary exertional level; home healthcare aide, a semi-skilled occupation at the medium exertional level; home health manager,[11] a skilled occupation at the light exertional level; and newspaper sample delivery manager, a semi-skilled occupation at the medium exertional level. (Tr. 84-85). The VE further testified that Plaintiff would have acquired management, sales, and clerical skills in the course of her past work, but did not specify which skills would have been associated with each of her former jobs. (*Id*.).

The ALJ then posed a question to the VE based on a hypothetical individual of Plaintiff's education, training and work experience, with an RFC, as assigned by the ALJ, for "light work" with additional restrictions. The VE opined that such an individual could perform Plaintiff's past work as a telemarketer, home healthcare manager, small business owner or medical assistant.

In response to a hypothetical question assuming the same RFC, and with the addition of a requirement that the worker be able to sit or stand and change position frequently, the VE again opined that the hypothetical person would be able to perform Plaintiff's past work as a telemarketer, home healthcare manager, small business owner or medical assistant. (Tr. 85-86).

In response to a hypothetical question posed by Plaintiff's counsel, the VE testified that the addition of requirements that the person be permitted to (1) move from sitting to standing on a regular basis while performing her work, and (2) take a break between position changes would

---

[11]     The VE did not provide a Dictionary of Occupational Titles ("DOT") code for the occupation of "home health manager."

preclude competitive employment. (Tr. 88). When asked to assume the same RFC, but with the addition of a restriction to a sedentary exertional level, the VE opined that Plaintiff would be able to perform her past relevant work as a telemarketer and that other positions existed in the national economy which met the requirements of the hypothetical.

### B. The July 2, 2012 Evidentiary Hearing (Tr. 107-15)

#### 1. Plaintiff's Testimony – Second Hearing

At the July 2, 2012 hearing,[12] convened after remand from the Appeals Council, the ALJ asked Plaintiff for clarification regarding her past relevant work as a telemarketer and as the owner of a small business marketing natural products. He also requested additional tax records related to her past work.

#### 2. Vocational Expert Testimony – Second Hearing

Delores Gonzales, the VE who had testified at the first hearing, also testified at the second hearing. The ALJ directed Plaintiff's counsel to provide the VE with a copy of the RFC he had assigned in his unfavorable August 9, 2010 decision and stated, "[s]o that is my RFC."[13] (Tr. 110). The VE then testified that, in addition to the previously identified positions of "telemarketer" and "small business home healthcare owner," Plaintiff also had past relevant work as a "home healthcare manager," and as a "small business owner." (*Id.*). The VE explained that both positions were classified as skilled at the light exertional level with an SVP

---

[12] The hearing participants agreed to the use of video teleconferencing, which apparently resulted in hearing difficulties for the court reporter, and resulted in portions of the transcript where the testimony was inaudible. (Tr. 93). The parties have not asserted error related to the inaudible portions of the transcript. The Court is satisfied that such problems do not preclude appropriate review of the record for purposes of this decision.

[13] The ALJ's earlier RFC did not include the limitation that Plaintiff could never reach overhead. The RFC the ALJ relied on in his second opinion, which was issued after the July 2, 2012 hearing, provided that Plaintiff could never reach overhead. (Tr. 40). As explained below, therefore, the VE's testimony at the second hearing was not based on an accurate depiction of Plaintiff's RFC.

of 6.[14]  (*Id.*).  She further testified that Plaintiff would not be able to return to her past relevant work as a "salesperson," due to the restrictions in the RFC with respect to exposure to extreme cold, wetness, heat, fumes, odors, dusts and gases.  (*Id.*).

The VE then testified that Plaintiff could continue to perform her past relevant work as telemarketer, home healthcare manager, and small business owner.  (Tr. 110-111).  The VE further testified that some of Plaintiff's skills would transfer to positions she had not previously performed.  In this regard the VE identified "automotive leasing sales representative," at the light exertional level with a sit /stand option; and "supervisor of order takers" or "rate supervisor," at the sedentary exertional level.  (Tr. 111-12)  The VE testified that these three jobs were the only ones that correlated to Plaintiff's transferable skills.  (*Id.*).  She enumerated the skills that would be transferrable from the home healthcare manager and small business owner positions and also stated that she had obtained the list of transferrable skills from the DOT job description for a "supervisor of order takers," one of the alternative sedentary occupations she had identified  (Tr. 112).

In response to counsel's questioning, the VE explained that, as performed, Plaintiff's former occupation as a "home healthcare manager" included not only administrative and supervisory duties, but also the duties of a "home healthcare aide. "  (Tr. 113).  The VE identified "home healthcare aide" as a semi-skilled position with medium exertional requirements and then added, "[b]ut we all know that it's probably heavy because of having to transfer patients."  (*Id.*).

---

[14]    The SSA uses a Specific Vocational Preparation (SVP) rating to indicate how long it takes a worker to learn how to do his or her job at an average performance level.  The SVP numbers assigned to each job have been pre-determined by the Department of Labor (DOL).  There are nine possible SVP ratings.  Jobs with SVP ratings of 1 or 2 are considered unskilled.  Jobs with SVP ratings of 3 or 4 are considered semi-skilled.  Jobs with SVPs greater than 4 are skilled.

Plaintiff's counsel questioned the VE about the reaching requirements applicable to the sedentary jobs, "supervisor of order takers" and "rate supervisor," that she had identified. The VE responded that a supervisor of order takers was required to reach "frequently." [15] (Tr. 114). Counsel then posed a hypothetical question which assumed the RFC the ALJ had assigned after the first hearing, coupled with an additional restriction that the individual could reach in all directions, but only occasionally. (*Id*.). The VE responded that the additional restriction would preclude performance of the sedentary occupations she had identified. (*Id*.).

### 3. Medical Expert Testimony – Second Hearing

Anthony Francis, M.D., a reviewing medical expert, also testified at the July 2012 evidentiary hearing. Dr. Francis summarized the medical records on which he had relied. Dr. Francis then testified that, during the time period preceding and including the DLI, Plaintiff had an RFC for less than the full range of "sedentary work." Dr. Francis further testified that the medical evidence did not support an RFC of "light work" with additional restrictions. (Tr. 97, 105-06). Dr. Francis suggested that Plaintiff had several severe impairments at the time of her DLI, but allowed that they were poorly documented. He further opined that the single opinion of record finding an RFC for "light work" was against the weight of the medical evidence. (*Id*.). Finally, he opined that to the extent that Exhibit 15F, a "non – M. D. chart," supported an RFC for "light work," it should not be treated as medical evidence. (*Id*.).

## V. The Decisions of the ALJ and the Appeals Council

### A. The ALJ's First Decision (Tr. 124-136)

In a decision dated August 9, 2010, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2009 (her "DLI") and had not engaged in substantial

---

[15] At this point, portions of the testimony were transcribed as "inaudible," but the associated audible testimony permits review of this issue.

gainful activity from February 20, 2006, through her DLI.  Therefore, Plaintiff was required to

establish that she was disabled between February 20, 2006, and June 30, 2009, in order to qualify

for disability benefits.  *See* 20 C.F.R. § 404.130.

The ALJ found that Plaintiff had the severe impairments of coronary artery disease,

asthma, chronic obstructive airway disease and osteoarthritis, but that she did not have an

impairment or combination of impairments that met or medically equaled a listed impairment.

(Tr. 129-130).  The ALJ then determined that Plaintiff had the RFC to perform light work, as

defined in 20 CFR § 404.1567(b), but with the following limitations:

> The Plaintiff can climb stairs and ramps occasionally.  The Plaintiff cannot climb
> ladders, scaffolds, or ropes. The Plaintiff can occasionally stoop, kneel, and
> crouch, but cannot crawl.  The Plaintiff cannot have any concentrated exposure to
> extreme cold, wetness, heat, fumes, odors, dust, or gases.  In addition, the Plaintiff
> must have a sit/stand option with the ability to change positions frequently.

(Tr. 131).

In assigning this RFC, the ALJ gave "great weight" to the opinion of Dr.

Mendoza, the consultative examiner, and cited her findings as set forth in Exhibit 31F.[16]

(Tr. 133-134, 1122-1137).  The ALJ also considered the opinions of Plaintiff's treating

physicians; Drs. Lowder, Ojile and Geistler.  The ALJ indicated that he would not give

controlling weight to Dr. Lowder's opinion regarding Plaintiff's RFC because she

expressed an opinion on a matter reserved to the Commissioner and had failed to note

that several of the impairments on which she based her opinion were stable.  (Tr. 135).

The ALJ also refused to assign significant weight to the opinion of Dr. Ojile because he

had not described specific functional limitations and had expressed an ultimate opinion

---

[16]    Although the ALJ gave "great weight" to the opinion of Dr. Mendoza, his opinion
mistakenly identifies the opinion as that of "Dr. Bhattachrya."  There is no other indication in the
record that a physician named "Dr. Bhattachrya" either provided care or offered an opinion in
this case.  (Tr. 134).

on a matter reserved to the Commissioner. *Id.* Finally, because he found that several of

Plaintiff's impairments exceeded the scope of Dr. Geistler's expertise as a podiatrist, the

ALJ assigned only partial weight to Dr. Geistler's opinions. *Id.*

The ALJ then assigned Plaintiff an RFC for light work, and concluded that Plaintiff

would be able to perform her past relevant work as a "telemarketer" and as a "small business

home healthcare owner." Therefore, the ALJ determined that Plaintiff was not under a disability

as defined by the Act, between February 20, 2006, and June 30, 2009. (Tr. 135-36).

### B. The Appeals Council Decision (Tr. 143-44)

Plaintiff sought review of the ALJ's August 9, 2010, decision. Following its review, the

Appeals Council remanded the case to the ALJ. The Appeals Council directed the ALJ to

evaluate Plaintiff's obesity in accordance with Social Security Ruling (SSR) 02-01p, and to

further consider Plaintiff's maximum RFC, including the provision of specific references to the

evidence of record supporting the assessed limitations. The Appeals Council also directed the

ALJ to explain the weight he attributed to the opinions of non-treating sources, to obtain

supplemental VE testimony to further evaluate whether Plaintiff's past jobs met the requirements

of past relevant work, and to determine whether, given the assigned RFC, Plaintiff would be

capable of performing those jobs.

### C. The ALJ's Decision after Remand (Tr. 32-46)

On remand from the Appeals Council, and after holding a second evidentiary hearing, the

ALJ issued a second decision dated October 25, 2012. In that decision, the ALJ determined that

Plaintiff had not engaged in substantial gainful activity from June 27, 2009, her amended

disability onset date, through her DLI. (Tr. 37). The ALJ further found that Plaintiff had the

severe impairments of coronary artery disease, radiculopathy, COPD, asthma, and obesity, but

did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  (Tr. 40).  The ALJ concluded that Plaintiff had the RFC to perform light work with specified limitations.  Specifically, he found that Plaintiff:

> could occasionally climb stairs and ramps, but could never climb ladders, scaffolds, or ropes.  [Plaintiff] could occasionally stoop, kneel, and crouch, but never crawl.  [Plaintiff] could not have any concentrated exposure to extreme cold, wetness, heat, fumes, odors, dust, or gases.  [Plaintiff] must have a sit/stand option at the work site with the ability to change positions frequently, and ***[Plaintiff] could not reach overhead.***

*Id.* (emphasis supplied).[17]

The ALJ assigned "great weight" to the opinion of Dr. Mendoza, the consultant medical examiner, but "little weight" to the opinions of Plaintiff's treating physicians, Drs. Lowder, Ojile, and Geistler.  (Tr. 43-44).  The ALJ gave several reasons for discounting these opinions. He found that the opinions exceeded the scope of the physicians' expertise, invaded the province of the ALJ to make ultimate disability determinations, and were inconsistent with their own medical records and the record as a whole.  (*Id.*).  The ALJ also gave "little weight" to the opinion of Dr. Francis, the testifying medical expert, because his opinion was based on a review of the medical records rather than physical examination of Plaintiff.  (Tr. 44).

Citing the VE testimony offered at the second hearing, the ALJ determined that Plaintiff would be able to perform her past relevant work as a "home healthcare manager, as it is generally performed."  (Tr. 45).  The VE identified Plaintiff's home healthcare manager position

---

17    This RFC includes a substantial restriction that was never posed to VE in either hearing. During the second hearing the ALJ had directed the VE to assume, for purposes of her testimony, the RFC he assigned in his earlier opinion.  That RFC did not include the additional limitation the ALJ found in his second decision, namely that Plaintiff could never reach overhead.  As explained below, this error impacted the reliability of the VE's testimony with respect to assessing Plaintiff's ability to perform her past relevant work, and her ability to perform other work in the national economy.

as "light and skilled."

Despite having found Plaintiff capable of performing her past relevant work, the ALJ proceeded to step-five and made an alternative finding that Plaintiff could perform another occupation, "automotive leasing sales representative," which was available in significant numbers in the national economy. In making this determination, the ALJ considered Plaintiff's age (50 or "approaching advanced"), limited education, ability to communicate in English, and the skills she had acquired from her past relevant work. (Tr. 45). The ALJ stated his belief that the VE had testified that an individual of Plaintiff's age, education, past relevant work experience and RFC could have performed the occupation of "automotive leasing sales representative."[18] (Tr. 46). Based on this understanding of the record, the ALJ concluded that between her onset date and her DLI, Plaintiff had not been under a disability as defined by the Act. (Tr. 45-46).

## VI.    Applicable Law

In a disability insurance benefits case, the burden is on the plaintiff to prove that he or she has a disability. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A plaintiff will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national

---

[18]    The ALJ was mistaken. The transcript of the hearing testimony does not indicate that the VE offered such testimony involving age, education, and work experience. (Tr.109-14).

economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B). *See also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner has promulgated regulations outlining a five-step process to guide an ALJ in determining whether an individual is disabled. Under these regulations, the ALJ first determines whether the individual is engaged in "substantial gainful activity." If she is, then she is not eligible for disability benefits. 20 C.F.R. § 404.1520(b). If she is not, the ALJ must consider at step two whether the individual has a "severe impairment" that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the plaintiff is not found to have a severe impairment, she is not eligible for disability benefits. If, however, the plaintiff is found to have a severe impairment, the ALJ proceeds to step three to determine whether the impairment meets or is equal to one determined by the Commissioner to be conclusively disabling. If the impairment is specifically listed, or is equal to a listed impairment, the plaintiff will be found disabled. 20 C.F.R. § 404.1520(d). If the impairment is not listed, or is not the equivalent of a listed impairment, the ALJ considers at step four whether the plaintiff is capable of performing past relevant work. If the plaintiff can still perform her past work, she is not disabled. 20 C.F.R § 404.1520(e). If the plaintiff cannot perform her past work, the ALJ proceeds to step five to consider whether the plaintiff is capable of performing other work available in the national economy. Only if a plaintiff is found incapable of performing other work in the national economy will she be found disabled. 20 C.F.R. § 404.1520(f); *see also Yuckert*, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Astrue*, 621 F.3d 734,

738 (8th Cir. 2010) (quoting *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)). The

ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record

as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less

than a preponderance, but enough that a reasonable mind might accept it as adequate to support a

decision." *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008).

Despite this deferential stance, a district court's review must be "more than an

examination of the record for the existence of substantial evidence in support of the

Commissioner's decision." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The district

court must "also take into account whatever in the record fairly detracts from that decision." *Id.*

Specifically, in reviewing the Commissioner's decision, a district court is required to examine

the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (quoting *Cruse

v. Bowen*, 867 F.2d 1183, 1184-85 (8th Cir. 1989)).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the

available "zone of choice" defined by the evidence of record. *Buckner v. Astrue*, 646 F.3d 549,

556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing

court might have reached a different conclusion had it been the finder of fact in the first instance.

*Id.*; *see also McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if

substantial evidence supports the Commissioner's decision, the court "may not reverse, even if

inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VII.    Discussion

Plaintiff raises numerous issues for review.  As noted below, the Court concludes that the ALJ erred regarding his assessment of Plaintiff's ability to perform her past relevant work, and erred at step five.  Accordingly, the Commissioner's decision will be vacated and the matter remanded.  The Court addresses each of Plaintiff's proffered issues below.

### A.       *The ALJ Gave Proper Weight to the Medical Opinions of Record*

Plaintiff argues that the ALJ erred by failing to give controlling weight to the medical source opinions offered by her treating physicians.  (Tr. 43-44).  Specifically, Plaintiff asserts that the ALJ either failed to consider, or selectively applied, the regulatory factors to be considered in weighing medical opinions.  20 C.F.R. § 404.1527(c)(1)-(6).

In deciding what weight to afford any medical source opinion, the ALJ is required to consider several factors, including:  whether the physician examined the plaintiff; the length, nature, and extent of the treatment relationship; how well the physician supported the opinion with relevant evidence, including medical signs and laboratory findings; how consistent the physician's opinion was with the record as a whole; whether the physician was a specialist; and any other factors that support or contradict the physician's opinion.  *See* 20 C.F.R. §§ 404.1527(a)(2); 404.1527(c)(1)-(6); 416.927(c).

Pursuant to the Commissioner's regulations and rulings, the opinions of treating sources are entitled to "controlling weight," but only if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence."  *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (8th Cir. May 27, 2015)

(citing *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007) (internal quotation marks omitted). *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Davidson v. Astrue*, 501 F.3d 987, 991 (8th Cir. 2007) (stating that "'an appropriate finding of inconsistency with other evidence alone is sufficient to discount' a treating physician's RFC") (quoting *Goff v. Barnhart*, 421 F.3d 785, 790-91 (8th Cir. 2005)).

If the ALJ cannot afford the opinion "controlling weight," he should consider several factors, including those mentioned above, to determine what weight he will assign to the opinion. *See* 20 C.F.R. §§ 404.1527, 416.927. If a treating source's opinion is not entitled to controlling weight, it "should not ordinarily be disregarded and is [nonetheless] entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (citing *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)). *See also* 20 C.F.R. §§ 404.1527, 416.927. Nonetheless, "[t]he ALJ 'may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Papesh*, 786 F.3d at 1132 (quoting *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015)). Regardless of the weight the ALJ decides to afford the opinion of a medical source, the ALJ must "always give good reasons" for the weight assigned to the opinion. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

Upon review of the record and the ALJ's opinion, the Court is satisfied that the ALJ, in discounting the opinions of the treating physicians, appropriately considered and did not selectively apply the factors set forth in 20 C.F.R. § 404.1527 (c)(1)-(6). The ALJ took into account whether and how often the particular medical source had examined the Plaintiff; the length, nature, and extent of a treatment relationship, if any; the frequency of examination; the supportability of the opinion; its consistency with the record as a whole; the source's

specialization; and the source's familiarity with the record and the requirements of the Commissioner's disability programs. *Id.* The ALJ was not required to include a specific recitation of his consideration of each factor in order to comply with the requirements of 20 C.F.R. § 404.1527. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014).

In this case, the treating physicians' opinions were submitted on forms from Plaintiff's counsel. (Tr. 966-69, 972-79, 1381-84, 1408-11). The forms invited both check-box and open-ended responses, but the physicians almost exclusively used the check-box format to provide the requested information. In addition to the forms, the physicians provided summary statements explaining, at least to some extent, the responses provided in the forms. Although these additional statements confer more weight on the opinions than use of the check-box format alone, the statements do not include objective or specific medical evidence to support the opinions. *See*, *e.g.*, *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (holding that a checkbox form has little evidentiary value when it '"cites no medical evidence, and provides little to no elaboration'") (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)); *Taylor v. Chater*, 118 F.3d 1274, 1279 (8th Cir. 1997) (holding that "[RFC] checklists, though admissible, are entitled to little weight in the evaluation of disability").

In addition, the ALJ explicitly found Dr. Lowder's July 2009 and May 2012 opinions inconsistent with both the objective evidence of record and her own treatment notes, which indicated that Plaintiff was clinically stable. (Tr. 43, 706, 743, 768, 770, 972-74, 1381-84). These are valid reasons not only to deny controlling weight to Dr. Lowder's opinions, but also to deny them substantial weight. *See Papesh*, 786 F.3d at 132-34. In addition, the ALJ properly considered that, in some instances, Dr. Lowder relied solely upon Plaintiff's subjective complaints – complaints which the ALJ also discounted as lacking in credibility. (Tr. 43, 974).

*See Gonzales v. Barnhart*, 465 F.3d 890, 896 (8th Cir. 2006) (affirming the ALJ's decision to give less than controlling weight to a medical opinion because it appeared to be based solely on the plaintiff's subjective complaints).

Similarly, the ALJ considered, but gave "little weight" to, the two reports submitted by Dr. Geistler because they were inconsistent with the medical evidence of record and with one another. (Tr. 43-44, 966-69, 1408-11). *See Papesh*, *supra*. In discounting Dr. Geistler's opinion, the ALJ noted that Dr. Geistler had opined that Plaintiff could not work because of pain, but also that he characterized that pain as "subjective." (Tr. 42-43, 970). *See Gonzales*, 465 F.3d at 896. The ALJ also properly discounted Dr. Geistler's opinion that that Plaintiff was disabled. Such an opinion exceeded the scope of his expertise in podiatry and invaded the province of the Commissioner to make an ultimate disability determination. *See* 20 C.F.R. § 404.1527 (d) (explaining that the opinions of medical sources on issues reserved to the Commissioner will not be given the weight ordinarily afforded to such opinions.).

Plaintiff also argues that the opinions of Drs. Lowder and Geistler should be given greater weight because they are consistent with one another. The Court, however, agrees with the Commissioner – the opinions from these sources are not as consistent as argued by Plaintiff. For example, Dr. Lowder twice opined that Plaintiff could sit for no more than one hour in an eight-hour work day. (Tr. 972, 1381). In contrast, Dr. Geistler twice opined that Plaintiff had no sitting limitations. (Tr. 966, 1408). Additionally, the doctors' assessments of Plaintiff's abilities to lift and carry weight, maintain balance and stoop, as well as her need for an assistive device differ substantially. (Tr. 966-69, 972-74, 1381-84, 1408-11). Due to the lack of supporting objective medical evidence, the inconsistencies between the two opinions, and their inconsistency with the evidence of record, the Court concludes that the ALJ did not err in failing

to afford either controlling or substantial weight to the opinions of Drs. Lowder and Geistler. *See Miller*, 784 F3d at 477; *Samons*, 497 F.3d at 818.

The Court further concludes that the ALJ did not err in giving little weight to the opinion of Dr. Ojile and properly concluded that it was not supported by substantial medical evidence of record.[19]  (Tr. 44, 976-79).  Dr. Ojile's opinion was appropriately discounted due to his failure to explain whether he believed that Plaintiff had any limitations with respect to sitting, standing, walking, lifting, or carrying.  (Tr. 976-77).  In addition, Dr. Ojile opined that Plaintiff would require more than three breaks in a normal work day, and be absent three days per month or more, but he provided no objective medical support for these conclusions in the narrative portion of his evaluation.  *Id.*  As the ALJ noted, these opinions contradicted Dr. Ojile's own treatment notes, to the extent that they established only "mild" airway obstruction.  (Tr. 44, 574).  *See also Raney*, 396 F.3d at 1010.

Finally, the Court concludes that the ALJ did not err in deciding to give little weight to the testimony of Dr. Francis, the reviewing medical expert.  (Tr. 44, 97-107).  It was not improper for the ALJ to consider, but discount, Dr. Francis' opinion because he had never examined Plaintiff and because his opinion lacked support in the record as a whole.  (Tr. 44). *See Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (stating that generally the opinions of non-examining medical sources will be given less weight); *see also* 20 C.F.R. § 404.1527(c)(4) (stating that "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

### B.     Inconsistencies between Dr. Mendoza's Opinion and the ALJ's RFC

The ALJ afforded the opinion of the examining consultant, Dr. Mendoza, "great weight,"

---

[19]     The Court notes that Dr. Ojile answered fewer than a third of the questions on the four-page form.  (Tr. 976-79).

finding it consistent with the evidence of record.  (Tr. 40, 43, 1128-29).  Dr. Mendoza found that

Plaintiff could lift and carry up to twenty pounds; was unlimited in her ability to sit; could stand

for one hour at a time for a total of three hours in an eight-hour work day; and concluded that she

was capable of work at the sedentary exertional level.

Plaintiff argues that the ALJ erred because he afforded great weight to Dr. Mendoza's

opinion, but assigned Plaintiff an RFC for less than the full range of light work rather than the

sedentary[20] exertional level Dr. Mendoza noted in her opinion.  In response, Defendant asserts

that the assigned RFC for "less than the full range of light work" is consistent with Dr.

Mendoza's opinion because the ALJ included a requirement for a sit/stand option in his RFC.

Upon consideration of these arguments, the Court concludes that the ALJ did not err in

assigning Plaintiff an RFC different than that recommended by Dr. Mendoza.  The ALJ properly

recognized that RFC determination Dr. Mendoza expressed exceeded the proper scope of her

expertise and invades the province of the Commissioner.[21]  *See* 20 C.F.R. § 404.1527 (d)

(explaining that the opinions of medical sources on issues reserved to the Commissioner will not

be given the weight ordinarily afforded to such opinions).  Therefore, the ALJ did not err in

giving great weight to those portions of Dr. Mendoza's opinion that did not exceed the scope of

her medical expertise while rejecting Dr. Mendoza's opinion regarding the ultimate issue of

Plaintiff's RFC.  *Cf. Johnson v. Apfel*, 240 F.3d at 1148.

---

[20]    "Sedentary work" "involves lifting no more than ten pounds at a time and occasionally
lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is
defined as one which involves sitting, a certain amount of walking and standing is often
necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required
occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[21]    Issues reserved to the Commissioner include: opinions that a plaintiff is disabled, that a
plaintiff's impairment meets or equals the requirements of any impairment in the Listing of
Impairments, designation of a plaintiff's RFC, and the application of vocational factors.  The
final responsibility for deciding these issues is reserved to the Commissioner.  *See* 20 CFR §
404.1527 (d) (1), (2).

### C.    *The ALJ's RFC Determination Is Supported by Substantial Evidence*

Plaintiff next argues that the ALJ's RFC determination that Plaintiff could perform light work, but not the full range of light work, is not supported by substantial evidence on the record as a whole.  Specifically, Plaintiff asserts that:  (1) the ALJ erred by failing to resolve the inconsistency between Plaintiff's inability to stand for more than three hours in an eight-hour work day and his RFC for less than the full range of light work; and (2) apart from his partial reliance on Dr. Mendoza's opinion, the ALJ failed to offer medical evidence in support of the portion of his RFC related to Plaintiff's ability to stand.  Defendant counters that by including the requirement for a sit/stand option in his RFC, the ALJ addressed the inconsistencies between his RFC and Dr. Mendoza's opinion, and that the RFC is supported by some medical evidence because it is not inconsistent with Dr. Mendoza's opinion.

The Court rejects Plaintiff's contention that her ability to stand is inconsistent with the Commissioner's definition of "less than the full range of light work."  The ability to stand is a determinative element of light exertion.  *See* POMS DI 25001.001(44).  Social Security Ruling 83-10 provides that light work requires the ability to stand or walk for approximately six hours in an eight-hour work day.  The ruling indicates that the ability to stand, although determinative, is measured over an approximate range.  *See* POMS DI 25001.001(44).  Moreover, the Commissioner further explains the distinction between light and sedentary exertion as follows:

> ***[L]ight exertion usually*** requires walking or standing for ***approximately*** 6 hours of the day, . . . an occupation is rated as light when it requires walking or standing to a significant degree . . . .   An occupation's standing requirement is the factor that determines the difference between sedentary and light exertion – ***if approximately 2 hours or less***, then sedentary; if approximately 6 hours or more, then light.

*Id*. (emphasis supplied).

Taken together these requirements establish that the ability to stand for three hours in an

eight-hour work day exceeds the requirement for sedentary work and represents less than the full range of light work, which is the very RFC assigned by the ALJ.

The Court also agrees with Defendant – the RFC is supported by some medical evidence because it is consistent with the statements in Dr. Mendoza's opinion that Plaintiff could:  lift and carry up to twenty pounds; was unlimited in her ability to sit; and could stand for one hour at a time for a total of three hours in an eight-hour work day.  By including a sit/stand option in his RFC, the ALJ addressed any inconsistency between the functional restrictions set forth in Dr. Mendoza's opinion and the requirements of light exertion.

Relying on *Bowen v. Georgetown Univ. Hosp.*, Plaintiff urges the Court to reject Defendant's argument as an impermissible "post-hoc rationalization" of the ALJ's findings.  *See* 488 U.S. 204, 212 (1988) (citation omitted) (explaining that a defendant seeking to defend past agency action against attack cannot support its position by "post hoc rationalization" or reliance on findings not made at the agency level).  Plaintiff correctly identifies a principle of administrative law, known as the *Chenery* doctrine,[22] which prohibits a reviewing court from relying upon findings not first made at the agency level.

The Court believes that the *Chenery* doctrine is inapt in this case.  Defendant's argument does not require the Court to rely on a new or "post-hoc" finding.  Instead, it requires interpretation of the ALJ's finding in light of the regulatory definitions of light and sedentary work.

**D.      *The ALJ Failed to Properly Assess the Nature of Plaintiff's Past Relevant Work***

Plaintiff next argues that that the ALJ erred at step four, by finding that Plaintiff could return to the position of home healthcare manager, as "generally performed," despite the VE's

---

[22] *See Sec. & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 196 (1947).

testimony that Plaintiff had both administrative and home healthcare aide duties in that position. Defendant disputes Plaintiff's characterization of the record in this regard. According to Defendant, the record does not support the conclusion that Plaintiff's past relevant work was performed as a composite job. This is a significant dispute. A finding that Plaintiff performed her past relevant work as a composite job impacts the analysis at step four.

A composite job is "[w]ork that has a blend of tasks from several different occupations." POMS DI 25001.001(11). The main duties of a composite job will "only be adequately described by multiple DOT occupations." *Id.* In *Arriaga v. Astrue*, No. 8:11CV261, 2012 WL 4105091, *17 (D. Neb Sept. 18, 2012), the district court explained the Commissioner's process for review in cases where a plaintiff's past relevant work was performed as a composite job.

> The Commissioner may use two different tests to determine whether a claimant retains the capacity to perform his past relevant work. *See* SSR 82–61, 1975–1982 Soc. Sec. Rep. Serv. 836, 1982 WL 13187, at *17 Sept. 18, 2012 (1982). Under the first test, a claimant will be found "not disabled" if he retains the RFC to perform "[t]he actual functional demands and job duties of a particular past relevant job." *Id.* at *2. Under the second test, a claimant will be found "not disabled" if he retains the RFC to perform "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* To determine how a job is usually performed in the national economy, the Commissioner may rely on job descriptions appearing in the Dictionary of Occupational Titles (DOT). *Id.* **However, composite jobs "have significant elements of two or more occupations and, as such, have no counterpart in the DOT." *Id.* Therefore, when a claimant's past relevant work is considered to be a composite job, the claimant's ability to perform his past job must be "evaluated according to the particular facts of each individual case." *Id.***

*Arriaga*, 2012 WL 4105091, at *17 (emphasis supplied).

The record establishes that Plaintiff's past work as a home healthcare manager involved duties attributable to two distinct occupations – both generally, and as described in the DOT. (Tr. 113, 321). Specifically, the VE testified that the two components of the home healthcare manager position, as Plaintiff performed it, had different exertional and skill elements: "[w]hen

she was the manager it was classified light, skilled with an SVP7 . . . [a]s home health aide it's classified as medium, semi-skilled with an SVP 3." (Tr. 113). Neither the VE nor the ALJ explicitly mentioned the term "composite," but a fair reading of the VE's testimony nonetheless establishes that Plaintiff's past work involved duties that are actually described by two distinct occupations, generally, and as described in the Dictionary of Occupational Titles. (Tr. 113, 321). Therefore, the ALJ was required, as a matter of law, to address Plaintiff's past relevant work under the composite job rubric. A failure to do so constitutes an error of law and grounds for remand. *Arriaga*, 2012 WL 4105091, at *17.

Instead of addressing the composite job issue, the ALJ concluded that Plaintiff could perform the home healthcare manager duties that were classified as light and skilled, but not the more physically demanding home health aide duties. (Tr. 44-45). As in *Arriaga*, the ALJ "bifurcated" the job duties, disregarded those duties Plaintiff could no longer perform, and determined that Plaintiff could continue to perform her past relevant work because she could, consistent with the assigned RFC,[23] perform the home healthcare manager position, as generally performed-that is, without the duties of the home healthcare aide. *Arriaga*, 2012 WL 4105091, at *17.

The ALJ erred by failing to appropriately assess the demands of Plaintiff's past relevant work, as she had performed it, rather than as generally performed. *Id.* (holding that when a plaintiff's past relevant work is considered to be a composite job, the plaintiff's ability to perform his past job must be "evaluated according to the particular facts of each individual case"). Moreover, the ALJ's determination that Plaintiff could perform the position as it is

---

[23] As noted above, and as explained again below, the RFC actually posed to the VE by the ALJ was erroneous because it failed to include the reach restriction the ALJ included in his decision. This error undermines the reliability of the VE's testimony relative to Plaintiff's ability to return to her past relevant work and to perform other work in the national economy.

"generally performed" does not cure this error.  (Tr. 113).  For jobs that are listed in the DOT, "DOT descriptions can be relied upon" to determine how a job is "generally performed," but pursuant to SSR 82–61 composite jobs "have no counterpart in the DOT," and therefore, an individualized inquiry is necessary to evaluate them.  SSR 82–61.

### E.      The ALJ's Alternative Step Five Analysis was Flawed

Although not required to proceed to step five, the ALJ did so and found, in the alternative, that Plaintiff also could perform other work.  In particular, based on testimony from the VE, the ALJ concluded that Plaintiff could find work as an automobile leasing sales agent, DOT 273.357-014.  (Tr. 45-46).  Plaintiff objects to this finding asserting that:  (1) the alternative finding should not be considered because it is contrary to the Commissioner's regulations regarding the sequential evaluation process; (2) the ALJ failed to make explicit findings based upon VE testimony that a hypothetical individual of Plaintiff's age, past work experience, RFC, and transferable skills could perform work as an automobile leasing sales representative; and (3) the ALJ failed to resolve an inconsistency between his RFC and the DOT requirements for an automotive leasing sales representative.[24]

As a preliminary matter, the Court rejects Plaintiff's assertion that alternative findings are contrary to the Commissioner's regulations regarding the sequential evaluation process. Alternative findings are regularly presented to and considered by district courts reviewing the Commissioner's determinations.  *See, e.g., Julian v. Colvin*, No. 4:13–CV–2167–RLW, 2015 WL 1257790, at *10 (E.D .Mo. Mar. 18, 2015) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) (holding that"[a]lthough the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five.")).  And such findings are

---

[24] DOT 273.357-014 Sales Representative, Automotive-Leasing (Business Ser.)

not only permissible, but in fact desirable, inasmuch as they conserve valuable agency and judicial resources. *See Murrell v. Shalala*, 43 F.3d 1388, 1389 (10th Cir.1994) (stating that "[w]e thus not only specifically reject plaintiff's objection to the ALJ's alternative disposition here, but expressly reaffirm our favorable view of such dispositions generally").

With respect to the merits of the alternative step-five finding, Plaintiff contends, and the Court agrees, that the ALJ erred as a matter of law because he failed to elicit the necessary expert testimony to support his finding. At the second hearing, the VE testified that an individual with the RFC previously found by the ALJ could work as an automobile leasing sales representative. (Tr. 110-111). The VE was not asked to consider Plaintiff's age or education in responding to this question. In his written decision, however, the ALJ incorrectly stated that the VE had testified that such an occupation could be "performed by an individual having the same age, education, past relevant work experience, and residual functional capacity as the claimant . . . ." (Tr. 45-46;111).

During the hearing, the ALJ directed counsel to show the VE the RFC set forth in the ALJ's prior decision. (Tr.110). Thereafter, the ALJ stated "[s]o that is my RFC," and "we had past relevant work as a telemarketer and a small business home healthcare owner." *Id.* The ALJ then posed the following questions: "[is] there any other past work besides those two?" and "[n]ow are there any other jobs that skills would transfer?" (Tr. 110-11). The VE answered "no" to each of these questions, and the ALJ asked no further questions. Therefore, although required to do so at step five, the ALJ did not obtain VE testimony that took into consideration the claimant's age, education, and ability to adjust to other work. 20 C.F.R. § 404.1520(a )(4)(v) (providing that "[a]t the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an

adjustment to other work"); *Cox*, 495 F.3d at 620 (stating that a vocational expert's response to complete and correctly phrased hypothetical provides substantial evidence for ALJ's step-five conclusion).  This failure to comply with the step-five regulatory requirements invalidates the ALJ's step-five determination.

In her reply brief,[25] Plaintiff points out an additional source of error at step-five.  The RFC the ALJ relied upon in his written decision included an additional restriction that was not presented to the VE.

The ALJ's second written decision found an RFC that was substantially identical to the RFC in the first decision with one additional limitation.  In the latter decision, the ALJ included a reach restriction – stating that Plaintiff "cannot reach overhead."   Despite this restriction, the ALJ found that Plaintiff could work as an automotive leasing sales representative, a position requiring occasional reaching in all directions.[26]  (Tr. 40).  Thus, the ALJ's determination that Plaintiff could work as an automotive leasing sales representative is inconsistent his own RFC.  The ALJ's failure to "elicit a reasonable explanation" for this inconsistency is legal error, and constitutes an independent basis for remand.  *See Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014).

In *Moore*, the Eighth Circuit found, in a case involving "a reaching requirement," that

---

[25]    The Court is reluctant to consider an argument raised for the first time in a reply brief, and would ordinarily allow the opposing party the opportunity to respond to an argument first raised in reply.  In this case, however, the Court believes it proper to consider the argument without seeking a response from the Defendant.  Such consideration does not prejudice Defendant, because the argument here provides an alternative, rather than the exclusive, basis for remand. In addition, the Court believes it is appropriate to address the argument in order to alert the parties to the application of relatively recent Eighth Circuit law which the ALJ may need to consider on remand.

[26]    The DOT and its companion volume, the Selected Characteristics of Occupations (SCO), provide that an automotive leasing sales representative must occasionally reach in all directions. *See* ECF No. 23-1.

SSR 00-4p requires the ALJ to elicit a reasonable explanation for an apparent unresolved conflict between DOT requirements and an RFC which precludes or restricts overhead reaching. *See* 769 F.3d at 989. The Eighth Circuit remanded for resolution of "an apparent conflict between the physical limitations described by the ALJ in his hypothetical and the requirements of the jobs the VE identified, as listed in the [DOT]." *Id*. at 990. The Eighth Circuit explained that "[i]f there is an 'apparent unresolved conflict' between VE testimony and the DOT, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the DOT information.'" *Id*. at 989-90 (quoting SSR 00–4p, 2000 WL 1898704, at *2–4 (Dec. 4, 2000)).

Similarly, in this case, the ALJ failed to elicit clarifying testimony from the VE or otherwise resolve the conflict between his RFC and his step-five finding that Plaintiff could engage in an occupation that requires occasional reaching in all directions. Although the ALJ noted that the requirements of the DOT for the automobile leasing sales representative varied from his RFC, and stated that the VE had to rely upon her professional experience in testifying that Plaintiff could perform that job, this acknowledgment does not cure the ALJ's error. (Tr. 46). Because she was instructed to rely upon an RFC which did not restrict Plaintiff's ability to reach, the VE's testimony could not have taken into account, much less resolved or explained , the apparent conflict between the DOT description and the RFC ALJ assigned in his second opinion. For this reason, the Court concludes that the alternative step-five determination also was erroneous in light of the reasoning set forth in *Moore* and that remand is proper on this basis as well.

**VIII.    Conclusion**

For the reasons set forth above, the Commissioner's decision denying benefits is reversed.  The matter is remanded for further proceedings regarding Plaintiff's ability to perform her past relevant work or, in the alternative, for further consideration of Plaintiff's ability, in light of all relevant factors, to make an adjustment to other work available in the national economy.

Accordingly,

**IT IS HEREBY ORDERED t**hat the final decision of the Commissioner denying Plaintiff's application for disability benefits under Title II of the Social Security Act is **REVERSED** and this cause is **REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this  8th  day of July, 2015.